**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3913-17T1

MARK BARRY and
SANDRA BARRY,

      Plaintiffs-Appellants,

v.

MELMED CONSTRUCTION
COMPANY, INC., a New Jersey
Corporation, and VICTOR MELMED,

      Defendants-Respondents.

_____

          Argued February 13, 2019 – Decided July 22, 2019

          Before Judges Fuentes, Accurso and Vernoia.

          On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2910-16.

          Gil D. Messina argued the cause for appellants (Messina Law Firm, attorneys; Gil D. Messina, on the brief).

          Thomas E. Wilson argued the cause for respondents.

PER CURIAM

Plaintiffs Mark and Sandra Barry appeal from an order entered two weeks before the end of extended discovery granting defendants Melmed Construction Company, Inc. and Victor Melmed's motion to compel arbitration. Because assessing defendants' litigation conduct in light of the factors identified by our Supreme Court in Cole v. Jersey City Medical Center, 215 N.J. 265, 280-81 (2013), makes clear defendants waived the agreement to arbitrate, we reverse.

The essential facts are easily summarized. Plaintiffs hired defendant Melmed Construction to complete renovations to their home in Middletown at an estimated cost of $280,000. At plaintiffs' request, Melmed inserted an arbitration clause drafted by plaintiffs' attorney into the contract.[1] At the end

---

[1] The arbitration clause provided as follows:

> Any issues that may arise during this repair project will be submitted to the architect for his determination. The decision of the architect will be final unless either party submits a claim or objection to the architect within 10 days. Any such issue or dispute shall not result in a delay of the project and shall be finally resolved after completion of construction by submission to an arbitrator selected by the parties or, if the parties cannot agree upon an arbitrator, the matter shall be submitted to the American Arbitration Association for selection of an arbitrator and for arbitration in accordance with

(continued)

A-3913-17T1

of the project, relations between plaintiffs and Melmed broke down, with each side suing the other in the Law Division.

Melmed filed first, demanding $85,000 on a book account complaint. The complaint included a demand for jury trial and a Rule 4:5-1 certification that no other action or arbitration was known or contemplated. Before being served with Melmed's complaint, plaintiffs filed their own complaint against Melmed alleging consumer fraud. Plaintiffs' complaint likewise included a jury trial demand but omitted a Rule 4:5-1 certification.

Melmed filed an answer to plaintiffs' complaint, with a jury demand, asserting its book account complaint was the only other action or arbitration known or contemplated. Several months later, plaintiffs obtained leave to file an amended complaint, adding Melmed's principal, Victor Melmed, as a defendant. In response, Melmed, seven months after filing its original complaint, moved to consolidate the actions and send them to arbitration. Plaintiffs moved to dismiss Melmed's complaint and opposed the motion to compel arbitration, arguing Melmed had waived arbitration by initiating suit in

(continued)
> Association's commercial rules. The parties shall share the costs of arbitration equally and the decision of the arbitrator shall be final. Each party will bear its own attorney's fees.

the Law Division and engaging in discovery and motion practice. Melmed countered that documents exchanged in discovery established the parties had initiated the arbitration process by "going through the architect." The court, concluding those "materials . . . concerning back and forth between an architect," which had not been submitted on the motion, "might be relevant information as to whether arbitration is appropriate or not," denied the motion to compel arbitration without prejudice.

The court further granted plaintiffs' motion to dismiss Melmed's complaint without prejudice for pleading deficiencies, denied the motion to consolidate as moot and directed defendants to file an answer to plaintiff's amended complaint with any counterclaim they deemed appropriate. The court agreed the cases should proceed under one docket number, explaining that once defendants filed their answer and counterclaim, the court would "expect a motion to be filed . . . and we'll figure out under which docket number we're proceeding and what the appropriate forum" should be. Defendants filed their answer and counterclaim, again demanding a jury trial but also including a count in their counterclaim demanding arbitration and noting in their Rule 4:5-1 certification that defendants "have hereby within demanded arbitration of these within matters."

Defendants did not, however, follow up that pleading with a motion to permit the court to determine "what the appropriate forum" should be. Instead, the parties intensively litigated the case for the next thirteen months, obtaining two extensions of the discovery end date. Plaintiffs obtained leave to file a second amended complaint, adding another Melmed principal, Eli Cohen, as a defendant. The parties engaged in extensive motion practice over service of the second amended complaint and defendants' failure to file a timely responsive pleading. Those motions were resolved with the court reinstating defendant Victor Melmed's appearance and directing defendants to file an answer to the second amended complaint. Defendants answered that complaint, filing a counterclaim and jury demand. Although the counterclaim included a count to compel arbitration, defendants' Rule 4:5-1 certification stated that no other action or arbitration was known or contemplated.

The parties also filed motions accusing one another of failing to comply with discovery. The court denied defendants' motion and granted plaintiffs', finding defendants' repeated failure to appear for depositions was not "substantially justified" and had unduly delayed discovery. The court sanctioned defendants, ordering them to pay plaintiffs' counsel fees "caused by the delay and necessity to resort to motion practice" and ordered them to

5

appear for their depositions. Defendants then failed to pay the sanction, necessitating another motion and a court order awarding additional fees.

Approximately one year after the denial without prejudice of defendants' motion to compel arbitration, defendants filed their second motion to compel arbitration supported only by counsel's certification to which he attached the contract and an email between the parties demonstrating that plaintiffs drafted the arbitration clause. Defendants did not submit a brief. Defendants made their motion a month after a case management conference setting dates for their response to defendants' second request for production of documents, which was delinquent, and extending discovery. No mention was made of a second motion to compel arbitration.

Plaintiffs opposed the motion, contending the order denying defendants' initial motion to compel arbitration was final and binding, the arbitration agreement was not enforceable against plaintiffs, and defendants had waived whatever right they had to arbitration by their litigation conduct. Plaintiffs also filed their own motion to dismiss defendants' pleadings for their failure to respond to defendants' second request for production of documents in accordance with the case management order.

After hearing argument, the judge put an opinion on the record granting the motion to compel arbitration and denying as moot plaintiffs' motion to dismiss defendants' pleadings for failure to comply with the case management order. The judge noted he had reviewed the audio recording of the prior motion to compel arbitration and found that judge had "concisely laid out . . . his plan for these matters," which included the denial of defendants' motion "without prejudice in anticipation that the motion would be refiled with the proper documentary evidence." Determining defendants' motion was thus "properly refiled," the court addressed it on the merits.

The court found a valid agreement to arbitrate and that the parties' dispute fell within the scope of the agreement. Noting plaintiffs' counsel drafted the clause, the court deemed it "extremely broad" and found the parties had "freely agree[d] to the terms and conditions of the contractual agreement." The court noted the presumption against waiver of an arbitration agreement, Spaeth v. Srinivasan, 403 N.J. Super. 508, 514 (App. Div. 2008), and that the determination of whether a party has waived its right to arbitration is a legal one, Cole, 215 N.J. at 275, which the court noted "must be expressed 'clearly, unequivocally, and decisively,'" id. at 276-77 (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)).

7

Instead, however, of evaluating the factors the Court identified in Cole for determining whether a party's litigation conduct "is consistent with its reserved right to arbitrate the dispute," id. at 280, the trial court simply concluded "[f]or all the foregoing reasons," that "defendant's motion to enforce the arbitration clause is hereby granted" without any analysis of waiver.

"[W]hether a party waived its arbitration right is a legal determination subject to de novo review." Id. at 275. Although the factual findings underpinning such a determination are ordinarily reviewed only for clear error, ibid., no factual findings bind us here. Instead, we are left to apply the Cole factors to the undisputed[2] procedural record of this case.

The Court in Cole identified seven factors a court should evaluate in assessing "whether a party to an arbitration agreement has waived that remedy." Id. at 280. The factors are:

> (1) the delay in making the arbitration request; (2) the
> filing of any motions, particularly dispositive motions,
> and their outcomes; (3) whether the delay in seeking
> arbitration was part of the party's litigation strategy;

---

[2] The only procedural fact apparently disputed is whether a trial date had been set when defendants made their second motion to compel arbitration. The court's Automated Case Management System record reflects a trial date of July 2, 2018, approximately two months following the extended discovery end date of May 10, 2018. Defendants contend they received no notice of a trial date. Given the dispute, we do not consider the setting of a trial date in our analysis.

(4) the extent of discovery conducted; (5) whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration; (6) the proximity of the date on which the party sought arbitration to the date of trial; and (7) the resulting prejudice suffered by the other party, if any.

[Cole, 215 N.J. at 280-81.]

Applying those factors here, we have no hesitation in concluding defendants waived any right they had to arbitration. Besides the fact that defendants initiated litigation in the Law Division in derogation of their right to arbitrate, they waited seven months before even raising the arbitration clause in the agreement they sued on. Moreover, when their motion to compel arbitration was denied without prejudice to provide them the opportunity to produce the documents they claimed established the parties had already initiated arbitration, defendants did not take it. Instead, they continued in litigation for another year before refiling their motion.

Although we do not agree with plaintiffs that the denial of defendants' initial motion was a final and binding order, we also disagree with the trial judge that defendants' motion could be considered "properly refiled" one year later. Further, defendants did not even file with their second motion the documents they claimed proved the parties had already begun the arbitration

9

process by submitting their dispute to the architect. Defendants only submitted those documents in their reply as an attachment to counsel's certification. Aside from the fact that the documents appear to relate to normal punch list items and do not appear to address either a dispute or arbitration, they were improperly submitted on the motion. They are obviously not the sort of documents that counsel can attest to under Rule 1:6-6, see Cafferata v. Peyser, 251 N.J. Super. 256, 263-64 (App. Div. 1991) (addressing the objectionable hearsay of attorneys certifying to facts not based on their personal knowledge), and submitting them in reply deprived plaintiffs of any opportunity to address them, see R. 1:6-3(a) (noting reply papers are only for "responding to opposing affidavits or certifications"); Borough of Berlin v. Remington & Vernick, Eng'rs, 337 N.J. Super. 590, 596 (App. Div. 2001) ("Raising an issue for the first time in a reply brief is improper.").

There is no question but that defendants were aware of their right to seek arbitration during the thirteen months they engaged in discovery and motion practice following the denial of their initial motion. The parties exchanged paper discovery during that period, engaged in motion practice and defendants' principals were deposed pursuant to court order after they failed to appear on noticed dates without justification. Defendants were sanctioned for their

conduct in delaying discovery and, indeed, it is difficult to conclude anything other than the more than one-year delay in refiling the motion was as a result of a deliberate strategy to use arbitration as a means of further delay. The prejudice to plaintiffs in defendants' waiting to compel arbitration until the end of extended discovery and multiple motions to compel defendants' compliance with their discovery obligations is manifest. See Cole, 215 N.J. at 281-82.

Because defendants' litigation conduct was inconsistent with their right to arbitrate their dispute with plaintiffs, resulting in a waiver of that right, we need not reach the issue of whether the arbitration clause would otherwise have been binding on the parties.[3]

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] We acknowledge the anomaly of plaintiffs' assertion that they are not bound by the arbitration clause their counsel drafted and they insisted be included in the contract between the parties, particularly in light of counsel's apparent admission that he drafted the clause to allow plaintiffs to argue it could not be enforced against them. While not endorsing such conduct, we do not address it in light of defendants' waiver of an arbitration remedy.

A-3913-17T1